IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JASON KALE CLAMPIT                                                                                          PLAINTIFF

v.                             Civil No. 5:24-cv-05083-TLB-CDC

SERGEANT JACOB ALLEN, Washington
County Detention Center (WCDC); SERGEANT
WILL FOSTER, WCDC; SHERIFF JAY
CANTRELL, Washington County, Arkansas; and
CHAPLAIN CRAIG BRATTEN. WCDC                                                                    DEFENDANTS

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff, Jason K. Clampit ("Clampit"), filed this civil rights action under 42 U.S.C. § 1983. Clampit proceeds *pro se* and *in forma pauperis*. Clampit maintains he was denied his right to practice his American Indian religious beliefs while incarcerated in the Washington County Detention Center ("WCDC") from January to June of 2024. Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), United States District Judge Timothy L. Brooks referred this case to the undersigned for the purpose of making a Report and Recommendation.

The case is before the Court on the Motion for Summary Judgment on the issue of exhaustion of administrative remedies filed by Defendants Allen, Foster, and Cantrell. (ECF Nos. 20-22). Separate Defendant Bratten filed a response indicating he does not oppose the Motion. (ECF No. 24). Clampit has responded (ECF Nos. 29-30), and the Motion is ready for decision.

**I.    BACKGROUND**

Clampit filed his Complaint on April 5, 2024, alleging he has been denied the property means to express his religion. (ECF No. 1, at 4). Specifically, he contends his Native American beliefs require him to have access to a grass yard – attached to the block yard – for prayer and

ceremony. *Id.* Clampit indicates he is a lay minister certified through the Native American and Indigenous Church of Brooksville, Florida and by Floyd "Red Cros" Westerman of the Crow Nation. *Id.* at 4-5. Clampit asserts that the American Indian Religious Freedom Act[1] clearly states that he should have "full and ethical rights to practice." *Id.* at 5. Clampit additionally alleged Act 94 of Arkansas law is being violated. *Id.* He asserts that the WCDC "only allows Christian Belief to be practiced."

As relief, Clampit seeks compensatory and punitive damages. (ECF No. 1 at 9). He also asks that his family be compensated for the expenses they have incurred due to their attempts to provide him with religious materials. *Id.*

## II.      APPLICABLE STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (*citing Anderson*

---

[1] The American Indian Religious Freedom Act codified at 42 U.S.C. § 1996 *et seq.*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.  DISCUSSION

Defendants Allen, Foster, and Cantrell have moved for summary judgment on the issue of exhaustion.  (ECF No. 20).  Specifically, Defendants contend Clampit failed to exhaust his administrative remedies by not identifying them by name in his grievances and for not fully exhausting the grievance procedure by filing appeals.

#### A.  The Exhaustion Requirement

"An inmate may not sue under federal law until exhausting available administrative remedies."  *East v. Minnehaha Cty.,* 986 F.3d 816, 821 (8th Cir. 2021); *see also Porter v. Nussle*, 534 U.S. 516, 524-25 (2002) (exhaustion is mandatory).  Specifically, § 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules."  *Id*. at 218 (internal quotation marks and citation

3

omitted). The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*.

However, "the PLRA contains its own, textual exception to mandatory exhaustion. Under § 1997e(a), the exhaustion requirement hinges on the availability of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake,* 578 U.S. 632, 642 (2016). The Supreme Court has recognized three circumstances under which an administrative remedy is unavailable. First, the Supreme Court has recognized that an administrative procedure is unavailable when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* (citing *Booth v. Churner,* 532 U.S. 731, 736 (2001)). Second, when the "administrative scheme" is "so opaque that it becomes, practically speaking, incapable of use." *Ross,* at 644. Third, "[a]dministrative remedies are not available if 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *East,* 986 F.3d at 821 (quoting *Ross,* at 644); *see also Foulk v. Charrier,* 262 F.3d 687 (8th Cir. 2001) (Inmate submitted an informal resolution request and testified he could not proceed with a formal grievance without a response. Defendant failed to establish Plaintiff could have proceeded with grievance procedure).

### B. The WCDC Grievance Policy

The WCDC grievance procedure is set forth in the Inmate Handbook. (ECF No. 22-5 at 1-2). Inmates are informed that the grievance procedures are as follows:

> You are allowed to file a grievance if you feel you have been subjected to abuse or an abridgment of your civil rights while being detained. All grievances will be

4

>done on the kiosk in your cellblock.
>
>A grievance must be submitted within ten days from the time the event complained of occurred. The grievance should include:
>A. The date and approximate time of the event
>B. The name(s) of the person(s) involved
>C. The name(s) of any witness(es)
>D. Pertinent details of the event
>
>All grievances are reviewed by the Jail Administrator or their designee. If you feel your grievance was improperly handled, you may appeal to the Sergeant or Lieutenant.

(ECF No. 22-5 at 1-2).

The WCDC grievance policy (D11.5) states its purpose is:

>Any detainee shall be allowed to file a grievance whenever the detainee believes they have been subjected to abuse, harassment, an abridgment of civil rights, or a denial of privileges specified in the Detainee Handbook. Grievances must be restricted to incidents that occur while the detainee is in the custody of the facility. The grievance procedure is an internal administrative means for the resolution of complaints and the identification of potentially problematic areas.

(ECF No. 22-4 at 1). The outlined procedures are more detailed than those contained in the Inmate Handbook. *Id.* at 1-2. With respect to grievance appeals, it states the inmate must appeal within five days "by indicating his or her desire for further review of the response on the kiosk provided in the cellblock." *Id.* at 2. It further provides a list of concerns or decisions that are not subject to appeal such as medical decisions, treatment, or testing, dietary concerns, disciplinary matters, etc. *Id.* The list does not include religious practices, beliefs, or freedoms.

### C. Clampit's Grievances

It is undisputed that Clampit did not file any grievances mentioning by name Defendants Allen, Foster, or Cantrell. While Clampit was in the custody of the WCDC, he filed the following grievances related to his religious beliefs:

5

| | |
|---|---|
| 3/8/2024 | I am a lay-minister of the Native American belief it is against my reli[g]ious freedom stated in the RAFA and AIRAFA act of 1994 and act 94 of 2022 not to be able to connect with mother earth. We perform ceremony every full moon and it['] s my religious right to have direct contact with the dirt. [C]oncrete is not part of nature! This facility is violating my religious rights by den[y]ing me of this. (Filed as a grievance). |
| 3/9/2024 | Sir, you are incarcerated. It is not a reasonable accommodation for you to have contact with the dirt, as there is not a secure enough location for us to fulfil that request. Signed Defendant Allen. |
| 3/10/2024 | [Y]ou have a yard with grass that is fenced in. I will contact Ch[ie]f Red Crow of the Crow nation along with our lawyers about this facility violating my religious rights. (Filed as a grievance). |
| 3/10/2024 | I spoke to you about this and took your letter to the marshal[]s. Signed Defendant Foster. Closed. |
| 3/10/2024 | [S]gt. [A]llen is not authorized to answer religious request. (Filed as a grievance). Closed by Defendant Foster without a response. |

(ECF No. 22-3 at 1-3).

Clampit filed the following general requests related to his religious beliefs.

| | |
|---|---|
| 3/9/2024 | I have contacted the Chapl[a]in concerning religious ceremony and religious right during my incarceration. My church The Organization of T.R.U.T.H. study Omnism which incorporates all beliefs. I would like to Start a Buddhist meeting through zoom in the activity room up stairs and Native ceremony on the grass yard. In need to spk with a superior officer concerning my religious rights and procedure. Chaplain told me to grieve [th]is issue which [I] did already. So now I need to speak with a superior concerning this issue. I have the contacts for the [SGI] [B]uddhist [A]ssociation and Chi[e]f Red Crow of the Crow Nation to verify our authenticity. |
| 3/99/2024 | We can look into getting a Buddhist minister if you would like. However, we are unable to let you out on a grass yard at this time due to the security issues that would present. Signed Defendant Allen and closed. |
| 3/22/2024 | attn. Lt. the full moon is this weekend as my religious right it states I need to have direct contact with mother earth for my prayers. I need |

        access to the grass yard that['s] connected to the block yard. As is my right as a native American ministry

3/23/2024    This request has already been answered. Signed Corporal Vandenack and closed.

(ECF No. 22-3 at 4-5).

Clampit submitted the following under religious services:

1/30/2024    [I] am a lay-minister for the native American and indigenous beliefs. [I]t is against my bel[ie]fs to n[o]t be able to connect with our mother earth and perform the[ ]rites and ceremony of my ancestors. [U]nder the R[FR]A[2] and AIR[]FA act of 1994.

1/30/2024    I can understand your frustration. You will need to make a request under the grievances tab or ask to speak to a Senior Officer about your beliefs and needs. Signed Defendant Bratten.

(ECF No. 22-3 at 6).

### D. Analysis

Defendants Allen, Foster, and Cantrell maintain Clampit failed to exhaust his administrative remedies for the following reasons: (1) he did not name them in any grievances or requests he submitted; and (2) he did not submit appeals of grievance denials. In their statement of facts, the following factual statement is made: "Plaintiff did not file a grievance against Sgt. Jacob Allen, Sgt. Will Foster, or Sheriff Jay Cantrell alleging that any of these individuals violated his religious rights before he filed this lawsuit as required by the policies and procedures of the

---

[2] The Religious Freedom Restoration Act is codified at 42 U.S.C. § 2000bb *et seq.* The RFRA's application to state governments was held unconstitutional as not being a proper exercise of Congress' enforcement powers under Section 5 of the Fourteenth Amendment. *City of Boerne v. Flores,* 521 U.S. 507 (1997). It continues to apply to the federal government. Subsequently, Congress then enacted the Religious Land Use and Institutionalized Persons Act (RLUIPA) codified at 42 U.S.C. § 2000cc *et seq. See Barnett v. Short,* 129 F.4th 534 (8th Cir. 2025) (holding RLUIPA permits the recovery of money damages but that Congress's authorization of suit against the jail administrator in her individual capacity for RLUIPA violations exceeded its spending power).

Washington County Detention Center and the PLRA." (ECF No. 22 at 7).

In response to Defendants' Motion, Clampit fails to address Defendants' claim that they were not specifically named in any of the grievances/requests as required by the WCDC grievance procedure.

Rule 56(e)(2)-(3) of the Federal Rules of Civil Procedure provides that "[i]f a party . . . fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion [and] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)-(3).

Both the grievance policy and the Inmate Handbook clearly state that in any grievance the inmate must include the names of the persons involved in the incident. *See* (ECF No. 22-4 at 2); (ECF No. 22-5 at 1). The Court finds undisputed that none of Clampit's grievances or requests named Defendants Allen, Foster, or Cantrell. Thus, Clampit did not properly exhaust his administrative grievances. As the Supreme Court has stated, the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218. Clampit did not include in his grievances the required content.

In Clampit's affidavit of facts, he asserts that when his grievances of March 9 and March 10, 2024, were closed by Defendants Allen and Foster, it made it impossible for him to appeal. (ECF No. 29 at 3). According to Clampit, once a request or grievance is closed, "the option to Appeal is no longer available." *Id.* Thus, allowing the Defendants to cut-off "any further

8

exhaustion" and opening the door for motion such as the current one to be filed. *Id.; see also* (ECF No. 30 at 3).[3]

Assuming as true that this the second step of the grievance process – the appeal – was unavailable, this does not excuse Clampit's failure to comply with the first step of the process by including content dictated by the grievance procedure which, among other information, requires identifying names of staff members involved in the alleged violation of his constitutional rights.

### IV.   CONCLUSION

For these reasons, it is recommended that the Motion for Summary Judgment (ECF No. 20-22) filed by Separate Defendants Allen, Foster, and Cantrell be **GRANTED and they be terminated as Defendants.**

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).   The failure to file timely objections may result in waiver of the right to appeal questions of fact.   The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**Status of Referral:   This case should remain referred for all matters not recommended for dismissal in this Report and Recommendation.**

**RECOMMENDED** this 9th day of July 2025.

*Christy Comstock*
_____
CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE

---

[3] On December 23, 2024, Clampit also filed a "summary of exhausted issue."  (ECF No. 19). In it he says he submitted two requests to religious services, two general requests, and three grievances all of which were denied.  *Id.* at 1.  He asserted that he had fully exhausted the means given to him as an inmate of the WCDC.